Chad L. Schexnayder (No. 009832)
E-Mail: cls@jhc-law.com
Travis A. Pacheco (No. 026337)
E-Mail: tap@jhc-law.com
**JENNINGS, HAUG & CUNNINGHAM, L.L.P.**
2800 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-1049
Telephone:    602-234-7800
Facsimile:    602-277-5595

David J. Caputo
Email:  dcaputo@youmancaputo.com
**YOUMAN & CAPUTO, LLC**
3803 West Chester Pike, Suite 150
Newtown Square, PA 19073
(215) 302-1999

Joseph Trautwein
E-Mail: jtrautwein@cpmiteam.com
**JOSEPH TRAUTWEIN & ASSOCIATES, LLC**
17 Auchy Road
Erdenheim, Pennsylvania  19038
Telephone: 215-764-2301

Attorneys for Plaintiff Relator

CV-18-08041-PCT-DJH

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America e*x rel.* Gregory Kuzma,<br><br>        Plaintiffs,<br><br>vs.<br><br>Northern Arizona Healthcare Corporation; Northern Arizona Orthopedic Surgery Center, LLC; and Flagstaff Medical Center, Inc.,<br><br>        Defendants. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 AND LOCAL CIVIL RULE 5.7**<br><br>Case No.<br><br>**COMPLAINT**<br><br>*JURY TRIAL DEMANDED*<br><br>**DO NOT PLACE IN PRESS BOX** |

On behalf of the United States of America pursuant to the United States False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), Plaintiff-Relator Gregory Kuzma ("Relator") files this *qui tam* Complaint for treble damages and civil money penalties against defendants Northern Arizona Healthcare Corporation, Northern Arizona

34P9247/

Orthopedic Surgery Center, LLC and Flagstaff Medical Center, Inc. These claims arise out of the April 1, 2015 acquisition of a privately owned orthopedic surgery center for two to three times the center's fair market value. Defendants knowingly overpaid for the surgery center to reward the center's 16 physician-owners for performing surgeries and other services at defendants' facilities and to induce them to continue to do so. This conduct violated the federal Anti-Kickback Statute and, therefore, claims submitted to government healthcare programs for payment for surgeries and other services performed by these physicians at defendants' facilities after April 1, 2015, violate the FCA.

In support of these claims, Relator alleges as follows:

## I.      THE PARTIES

### A.      Plaintiff-Relator

1.      Relator Gregory Kuzma, CPA is a citizen of the State of Arizona.

2.      Relator was employed by Northern Arizona Healthcare from January 1992 until March 2014, holding various financial planning roles from 1992 to October 2004 and serving as the Vice President and Chief Financial Officer of Northern Arizona Healthcare for the remainder of his tenure.

### B.      Defendants

3.      Northern Arizona Healthcare Corporation ("NAH") is an Arizona nonprofit corporation with a principal place of business at 1200 N. Beaver Street, Flagstaff, AZ 86001. NAH is the largest health system in North Arizona with consolidated net assets totaling more than $737 million as of the fiscal year ended June 30, 2017.

4.      Northern Arizona Healthcare Orthopedic Surgery Center, LLC ("NAHOSC") is an Arizona limited liability company with a principal place of business at 1200 N. Beaver Street, Flagstaff, AZ 86001 and a wholly owned subsidiary of NAH. Since April 1, 2015, it has owned and operated an approximately 16,000 square foot ambulatory surgery center specializing in orthopedic surgery and pain management at 1485 N Turquoise Dr. #100, Flagstaff, AZ 86001.

34P9247/

2

5. Flagstaff Medical Center, Inc. ("FMC") is an Arizona nonprofit corporation that operates a 270-bed hospital and regional trauma center located at 1200 N. Beaver Street, Flagstaff, AZ 86001. FMC is a wholly owned subsidiary of NAH and operates the flagship hospital in the NAH system, with net assets totaling more than $500 million for the fiscal year ended June 30, 2017.

6. NAH, NAHOSC and FMC (also collectively referred to herein as "defendants") are related parties within the meaning of federal health care program rules.

## II.    JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and/or 28 U.S.C. § 1391(b).

9. This Court has personal jurisdiction over the defendant under 31 U.S.C. § 3732(a) because the defendants transact business and submitted false or fraudulent claims directly or indirectly to the federal government in this judicial district.

10. Relator has direct and independent knowledge on which the allegations are based, is an original source of this information to the United States, and has voluntarily provided the information to the United States before filing this action based on the information.

11. This suit is not based on prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit, investigation, audit or report, or from the news media. To the extent that there has been any public disclosure unknown to Relator, he is an original source under 31 U.S.C. § 3730(e)(4).

## III.    Affected Federal Health Care Programs

### A.    Medicare

12. Medicare is a federal health insurance system for people 65 and older and for people under 65 with certain disabilities. Medicare Part A provides hospital

34P9247/

3

insurance for eligible individuals. See 42 U.S.C. §§1395c-1395i. Medicare Part B is a voluntary subscription program of supplementary medical insurance covering outpatient items and services. See 42 U.S.C. § 1395k(a)(2)(B).

**B.    Medicaid**

13.    States administer Medicaid programs in accordance with Federal regulations. State Medicaid agencies conduct their programs according to a Medicaid State plan approved by the Center for Medicare & Medicaid Services ("CMS"). Those state agencies pay providers for medical care and services provided to eligible Medicaid recipients. Providers that wish to participate in the Medicaid program must agree to comply with certain requirements specified in a provider agreement.

14.    While Medicaid programs are administered by the States, they are jointly financed by the Federal and State governments. The Federal Government pays its share of medical assistance expenditures to the State on a quarterly basis according to statements of expenditures submitted by the State and a formula used to calculate how much of the total reported expenditures the Federal Government will reimburse the State, as described in sections 1903 [42 U.S.C. § 1396b] and 1905(b) [42 U.S.C. § 1396d(b)] of the Medicaid Act. The amount of the federal share of medical assistance expenditures is called Federal Financial Participation ("FFP"). The State pays its share of medical assistance expenditures from state and local government funds in accordance with the requirements of section 1902(a)(2) [42 U.S.C. § 1396a(a)(2)] of the Medicaid Act. Different levels of federal funding are provided to different States, depending on need. The precise level of federal funding for each State is calculated by the Federal Government each federal fiscal year.

**C.    Other Federal Health Care Programs**

15.    The federal government administers other health care programs including, but not limited to, TRICARE, CHAMPVA, and the Federal Employee Health Benefit Program.

////

34P9247/                                              4

16.    TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces.

17.    CHAMPVA, administered by the United States Department of Veterans Affairs, is a health care program for the families of veterans with 100 percent service-connected disability.

18.    The Federal Employee Health Benefit Program, administered by the United States Office of Personnel Management, provides health insurance for federal employees, retirees, and survivors.

19.    Medicare, Medicaid and the other federal health care programs listed above will collectively be referred to herein as "government health care programs."

## IV.    BRIEF SUMMARY OF APPLICABLE LAW

20.    The United States False Claims Act prohibits, *inter alia*, the following:

knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval; and

knowingly making or using (or causing to be made or used) a false record or statement material to a false or fraudulent claim.

31 U.S.C. §§ 3729(a)(1)(A)-(B).

21.    The federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), prohibits the knowing and willful payment of remuneration to induce referrals for services that may be paid for by government health care programs.  The AKS defines "remuneration" as "transfers of items or services for free or for other than fair market value." *See* 42 U.S.C. § 1320a-7a(i)(6).

22.    Knowingly paying remuneration to physicians to induce them to perform services (or to influence physician behavior with respect to their services) for individuals who seek reimbursement for those services from government health care programs, or causing others to do so, while certifying compliance with the AKS (or while causing another to so certify), or while billing the government as if in compliance with these laws, violates the FCA.

34P9247/

5

## V.    DEFENDANTS' CONDUCT IN VIOLATION OF THE FCA

### A.    Entities not named as defendants

23.    NAO Building Partners, L.L.C. ("NAOB") is an Arizona limited liability company with a principal place of business at 1485 N. Turquoise Dr., #200, Flagstaff, AZ 86001. NAOB was the previous owner of the building now owned by NAHOSC. NAOB was owned primarily by the physicians of Northern Arizona Orthopaedics, LTD and the owners of Derosa Physical Therapy, P.C., both of which are described below.

24.    Summit Surgery and Recovery Care Center, Inc. ("SSRCC") was an Arizona corporation with a principal place of business at 1485 N. Turquoise Dr., #100, Flagstaff, AZ 86001. SSRCC is the previous owner of the outpatient surgery center now owned by NAHOSC. As the time of NAHOSC's purchase of the surgery center, SSRCC was owned by 16 orthopedic surgeons – five Flagstaff Bone and Joint, P.L.L.C. physicians and 11 Northern Arizona Orthopaedics, LTD physicians.

25.    Flagstaff Bone and Joint, P.L.L.C. ("FBJ") is an Arizona professional corporation with a principal place of business at 77 W. Forrest Ave., #301, Flagstaff, AZ 86001. FBJ is an orthopedic surgery practice group.

26.    Northern Arizona Orthopaedics, LTD ("NAO") is an Arizona corporation with a principal place of business at 1485 N. Turquoise Dr., #200, Flagstaff, AZ 86001 (NAOB's building). NAO is another orthopedic surgery practice group.

27.    Orthopaedic Surgical Management Company, LLC ("OSM") is an Arizona limited liability company with a principal place of business at 1485 N. Turquoise Dr., #200, Flagstaff AZ 86001. OSM is a management company owned by NAO and FBJ. FMC has paid OSM to provide management services at the hospital. After its April 1, 2015 acquisition of the surgery center, NAHOSC contracted to pay OSM to provide similar services at the center.

### B.    Brief history of the surgery center and its ownership

28.    In 1999, a 48,934-square foot building was constructed at 1485 N. Turquoise Dr., Flagstaff, AZ 86001. As of 2011, the building was owned by NAOB,

34P9247/                                                        6

and its tenants were a surgery center, the NAO physicians' offices, a physical therapy practice, a DME company owned by NAO, and an outpatient MRI clinic owned by Flagstaff Medical Center.

29.    The surgery center – which occupied 15,932 square feet and consisted of three operating rooms, five pre-op bays, and an eight-room recovery care center – was owned by SSRCC.

30.    Until January 2011, eleven NAO physicians owned SSRCC.  In January 2011, five FBJ physicians each purchased 6.25% ownership interests in SSRCC for approximately $450,000 each.

31.    When combined with the existing interests of 11 NAO physicians, the enterprise value of SSRCC was approximately $7.2 million as of 2011.

32.    After these buy-ins, the number of cases at the surgery center increased by approximately 10% over the next year.

33.    The physician owners of SSRCC were an important source of business for NAH and FMC in particular.  Orthopedic surgery is among the top two or three most profitable areas each year for FMC.

34.    In or about 2013, defendants began investigating the possibility of acquiring the assets of SSRCC from its 16 physician owners.

35.    In or about December 2013, the CEO of both NAO and SSRCC gave Relator permission to gather information related to SSRCC on behalf of NAH.

36.    Relator acquired relevant information and documentation, including the financials for Calendar Year 2012 and October Year-To-Date 2013, utilization data, payor information, and a fixed asset listing.

37.    Relator is highly experienced in business valuation and had routinely performed this function for NAH in his more than twenty years with the company.

38.    Based on all of the data available to him, Relator's independent valuation of SSRCC was between $8 and $10 million.

////

34P9247/

7

39.   In mid-December 2013, Relator summarized what he had learned and his conclusions in an email to NAH's Chief Executive Officer.

40.   Relator's employment with NAH ended in March 2014.

41.   In 2015, Relator learned from the defendants' publicly-available financial statements that, on April 1, 2015, NAHOSC had acquired the surgery center assets of SSRCC for $25.1 million – roughly two to three times what Relator's valuation had been in December 2013.

42.   Thereafter, Relator became aware of a Fair Market Value ("FMV") analysis of SSRCC completed by Somerset CPAs and Advisors of Indianapolis.

43.   Relator learned that Defendant NAH had retained Somerset in early 2014 and that, in September 2014, Somerset reported that SSRCC's FMV as of July 31, 2014 was $23.9 million plus/minus 5%.

44.   The price that defendants paid for SSRCC's assets was at the highest end of Somerset's valuation.

45.   Based on his work in December 2013, Relator recognized that Somerset's FMV analysis had produced a grossly-inflated valuation resulting from a number of facts, assumptions and/or projections that, on information and belief, defendants either knew were flawed and unrealistic or, at a minimum, defendants acted in reckless disregard of their truth.

46.   The flawed and unrealistic facts, assumptions and/or projections underlying the Somerset FMV analysis included without limitation the following: (1) overstating historic operating income and net revenue; (2) unreasonably high projections of future annual operating income; and (3) understating future capital expenditures.

47.   By way of example, regarding the understatement of future capital expenditures, the Somerset valuation reported that $50,000 of capital expenditures were anticipated in each of the next two years and $900,000 of capital expenditures were anticipated over six years, yet in the first quarter after acquisition alone, NAHOSC spent more than $1 million in capital expenditures.

34P9247/

8

48.    Based on his expertise as a CPA and his familiarity with the relevant data, Relator determined that correcting the flawed assumptions and/or projections in the Somerset analysis brought the valuation of SSRCC squarely in line with his own.

49.    Subsequent events demonstrate that the defendants knew, when they paid $25.1 million to acquire the assets of SSRCC on April 1, 2015, that the surgery center's true value was two to three times less.

50.    When the fair market value and the carrying amount of an asset are deemed to be unrecoverable under Generally Accepted Accounting Principles, an "impairment charge" must be taken on the company's books.

51.    NAHOSC and NAH took impairment charges on the surgery center in their audited financial statements of $8.0 million on June 30, 2016 and $7.9 million on June 30, 2017, bringing the current valuation to $9.2 million, which is completely consistent with Relator's original valuation.

52.    Defendants overpaid the surgeons to reward them for being an increasingly important profit center for the NAH system -- in 2011 and 2012, 17.5% of NAH's inpatient cases were orthopedic surgery cases – and to ensure that they remained so.

53.    NAHOSC overpaid for the surgery center to induce the center's 16 physician-owners to continue to perform surgeries and other services at facilities that defendants own and operate.

54.    This conduct violated the AKS and, therefore, claims submitted to government healthcare programs for payment for surgeries and other services performed by these physicians at defendants' facilities after April 1, 2015, violate the FCA.

## COUNT I

## VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(A)

55.    Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

////

34P9247/

9

56.   Defendants knowingly presented, or caused to be presented, and continue to present or cause to be presented, false and fraudulent claims for payment or approval to the United States – *i.e.*, claims submitted to government healthcare programs for payment for surgeries and other services performed by SSRCC's physician owners at defendants' facilities after April 1, 2015 – in violation of 31 U.S.C. § 3729(a)(1)(A).

57.   Said false and fraudulent claims were presented with defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

58.   The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid for these false and fraudulent claims had it known the falsity of said claims.

59.   As a direct and proximate result of the false and fraudulent claims made by defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus civil penalties up to the maximum permitted by law for each such violation of the False Claims Act.

WHEREFORE, Relator requests that judgment be entered against defendants Northern Arizona Healthcare Corporation, Northern Arizona Orthopedic Surgery Center, LLC and Flagstaff Medical Center, Inc. for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable.

## COUNT II

### VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(B)

60.   Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

61.   Defendants knowingly made, used or caused to be made or used, and continue to make, use and cause to be made or used, false records or false statements

34P9247/

10

material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

62.   Defendants' knowingly false records or false statements were material, and upon information and belief continue to be material, to the false and fraudulent claims for payments it made and continues to make to the United States.

63.   The materially false records or false statements that defendants made or caused to be made are set forth above and include, but are not limited to, false or fraudulent statements made or relied upon for purposes of Somerset's FMV analysis and false or fraudulent certifications of compliance with AKS.

64.   These said false records or false statements were made, used or caused to be made or used, and continue to be made, used and caused to be made and used, with defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

65.   As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus civil penalties up to the maximum permitted by law for each such violation of the False Claims Act.

WHEREFORE, Relator requests that judgment be entered against Northern Arizona Healthcare Corporation, Northern Arizona Orthopedic Surgery Center, LLC and Flagstaff Medical Center, Inc. for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable.

////

////

////

34P9247/

11

DATED this 28th day of February, 2018.

JENNINGS, HAUG & CUNNINGHAM, L.L.P.

s/ _____
Chad L. Schexnayder
Travis A. Pacheco

**Youman & Caputo, LLC**
By:    David J. Caputo*

**JOSEPH TRAUTWEIN & ASSOCIATES, LLC**
By:    Joseph Trautwein*

*Attorneys for the Plaintiff-Relator*

*Not Yet Admitted in Arizona for this Action

34P9247/

12